UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| TONYA R. SCEALF, | ) | |
|---|---|---|
| *Plaintiff*, | ) ) ) | No. 1:16-cv-391-TRM-SKL |
| v. | ) ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | |
| *Defendant*. | ) | |

# REPORT AND RECOMMENDATION

Plaintiff Tonya R. Scealf ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB") and supplemental security income ("SSI"). Each party moved for a judgment [Docs. 15 & 17] with supporting briefs [Docs. 16 & 18]. This matter is now ripe, and for the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings be **DENIED**; (2) the Commissioner's motion for summary judgment be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

## I.   ADMINISTRATIVE PROCEEDINGS

As reflected in the transcript of the administrative proceedings [Doc. 10 ("Tr.")], Plaintiff filed applications for DIB and SSI on February 7, 2013, alleging disability beginning April 7, 2010. After Plaintiff's claims were denied initially and upon reconsideration, a hearing on Plaintiff's claims was held before an administrative law judge ("ALJ") during which Plaintiff was represented by counsel. On June 23, 2015, the ALJ issued an unfavorable decision finding

that Plaintiff was not under a "disability" as defined in the Social Security Act ("Act"). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born in 1971 and had a work history that included work as a studio manager and machine operator/inspector (Tr. 27). The ALJ noted that Plaintiff was 39 years old on the alleged disability onset date, which is defined as a younger individual, had at least a high school education, and had the ability to communicate in English (Tr. 27).

### B. Medical Records

Plaintiff alleges disability due to chronic back pain caused by an L4-5 disc protrusion, radiculopathy in the bilateral lower extremities, chronic chest pains with heart palpitations status post myocardial infarction and stenting, coronary artery disease, chronic abdominal pain, and depression. Plaintiff has voluminous medical records, but the focus of this appeal is on the records and opinion of Steven Musick, DO, at Siskin Spine and Rehabilitation, who treated Plaintiff for back pain management beginning in May 2011 after a work-related lumbar strain on April 7, 2010 (Tr. 455-89, 931-34, 1728-29).

As contended by Plaintiff, Dr. Musick noted complaints of chronic back pain with radiation into the bilateral lower extremities and recommended physical therapy, which was initially helpful but Plaintiff was unable to attain all of the goals set at the initial consult, and she ultimately discontinued physical therapy due to other health issues (Tr. 455-89, 947-1036). Dr. Musick continued to treat Plaintiff throughout 2013 and 2014 for ongoing complaints of severe back pain, decreased range of motion, lumbar lordosis, lumbar tenderness, and radiculopathy,

2

and his testing revealed positive right straight leg raises as well as a slow gait (Tr. 588-627, 931-34, 1037-87). Dr. Musick ordered lumbar MRIs on August 26, 2011, and September 12, 2013 (Tr. 483, 1086). On October 24, 2013, Dr. Musick completed a medical source statement opining that Plaintiff's impairment was "chronic low back pain that hinders her ability to work" (Tr. 932). He opined her impairment prevents her from being reliable in attending a full time work schedule, that she would be limited to lifting no more than ten pounds occasionally, sitting for four of eight hours, standing for one of eight hours, and walking for two of eight hours, and that she would require one to two hours of bed rest during a normal work day (Tr. 932-34). Dr. Musick provided a second similar opinion in a medical source statement dated May 4, 2015 (Tr. 1728-29).

In addition, Plaintiff suffered a heart attack on February 7, 2013, and underwent stenting of the right coronary artery (Tr. 494-501). Plaintiff continued to experience frequent chest pain with palpitations and fatigue as well as increased depression (Tr. 584-86, 889-916, 1092-147). The ALJ summarized aspects of Plaintiff's extensive medical treatment and records, which will not be repeated here, but all germane records have been reviewed.

### C. Hearing Testimony

At the hearing before the ALJ, Plaintiff and a vocational expert ("VE") testified. The transcript of the testimony at the hearing (Tr. 35-72) has been carefully reviewed.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (internal citations omitted). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (internal citations omitted).

B.  The ALJ's Findings

The ALJ found Plaintiff met the insured status requirements through December 31, 2015 (Tr. 16).  At step one of the process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since April 7, 2010, the alleged onset date (Tr. 16).  At step two, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease, obesity, a depressive disorder, and an acute myocardial infarction with stent placement (Tr. 16-17).  At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any presumptively disabling impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App'x 1 (Tr. 17-18).  The ALJ determined Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of unskilled sedentary work[1] (Tr. 18-26).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work (Tr. 27).  At step five, after considering Plaintiff's age, education, work experience, and RFC, and after utilizing the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App'x 2, as a framework for her

---

[1] Specifically, the ALJ determined Plaintiff had the RFC to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: limited to work which allows the individual to shift to standing to stretch for up to five (5) minutes for every one (1) hour of sitting and to shift to sitting for up to five (5) minutes for every one (1) hour of standing and/or walking while remaining on task, in addition to normal breaks and lunch; limited to only occasional climbing of ramps and stairs, kneeling and crouching; limited to frequent balancing and stooping; limited to no climbing of ladders, ropes, and scaffolds and no crawling; limited to no concentrated exposure to extreme heat and extreme cold; limited to no exposure to workplace hazards such as unprotected heights and moving machinery; limited to work requiring one to maintain attention and concentration for two hour segments; limited to work which involves only simple, routine instructions; limited to work primarily with objects rather than with people; limited to work involving simple work-related judgments typically required for unskilled work; and limited to work involving only occasional work changes gradually introduced.

(Tr. 18-19).

decision and considering the testimony of the VE, the ALJ found there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including work as a table worker, check weigher, and finisher (Tr. 27-28). These findings led to the ALJ's determination that Plaintiff was not under a disability as defined by the Act at any time from the alleged onset date through the date of the ALJ's decision (Tr. 28).

## IV. ANALYSIS

The only issue raised by Plaintiff is whether the ALJ properly evaluated the medical opinion evidence offered by Dr. Musick. No party disputes that Dr. Musick is a treating physician as defined under the SSA.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (internal citation omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *McClanahan*, 474 F.3d at 833 (internal citation omitted). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal citations omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative

decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

An ALJ is responsible for determining a claimant's RFC after reviewing all of the relevant evidence in the record.[2] *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). The ALJ is "tasked with interpreting medical opinions in light of the totality of the evidence." *Griffith v. Comm'r of Soc. Sec.*, 582 F. App'x 555, 564 (6th Cir. 2014) (citing 20 C.F.R. § 416.927(b)). The ALJ must determine which medical findings and opinions to credit

---

[2] A claimant's RFC is the most the claimant can do despite his or her impairments. 20 C.F.R. §§ 404.1545(a)(1) & 416.945(a)(1). In other words, the RFC describes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). Moreover, "[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (citation and internal quotation marks omitted).

and which to reject. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013); *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (In determining a claimant's RFC, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physicians." (internal citation omitted)). A court will not disturb an ALJ's RFC determination as long as the finding is supported by substantial evidence. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

### B. Treating Source Opinion

The ALJ gave merely "some weight" to the opinions of Dr. Musick "to the extent they are consistent with" the RFC (Tr. 26). As reason for assessing only "some weight" to Dr. Musick's opinion, the ALJ noted that "Dr. Musick stated [Plainitff] could do no bending, yet throughout the hearing, [Plaintiff] repositioned (shifting from sitting to standing and from standing to sitting) a least a half dozen times, evidencing her ability to stoop." (Tr. 26). The ALJ also noted that "repeated physical examinations have shown [Plaintiff] to have normal or near normal range of motion of the spine." (Tr. 25-26). The ALJ found Dr. Musick's opinion was inconsistent with his own treatment records, with the noted improvement with treatment, and with Plaintiff's extensive daily activities (Tr. 26). The ALJ assigned "great weight" to the opinion of the non-treating state agency medical consultant, Thomas Mullady, MD, "based upon his physical examination of [Plaintiff] and because he is familiar with the Agency's disability program and functional requirements." (Tr. 25).

Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence, and thus the RFC is not supported by substantial evidence. Plaintiff maintains Dr. Musick's opinion deserves the status of controlling (or at least great) evidentiary weight and that the ALJ's decision to give it only some weight is error. Specifically, Plaintiff asserts the ALJ improperly

8

gave greater and substantial weight to the opinion of Dr. Mullady, while failing to articulate good reasons for discounting the opinions of Dr. Musick. Plaintiff further argues Dr. Musick's treatment records are not inconsistent with his opinions. Noting her long treatment history with Dr. Musick from May 2011 through the hearing date, Plaintiff argues that Dr. Musick's records reflect her frequent lumbar pain with range of motion examination, positive straight leg raises, lumbar lordosis, and tenderness to palpitation throughout the spine in spite of occasional "good days" or "rare medication non-compliance" [Doc. 16 at Page ID # 1802-03].

Defendant responds that the ALJ properly evaluated the medical opinions and that substantial evidence supports the RFC. Specifically, Defendant argues the ALJ based his decision on multiple factors including Plaintiff's "not entirely credible" subjective complaints, her treatment for several years for back pain with only mild objective abnormalities and initial medical comments that she had no impairment rating, a lack of objective findings, her release to work, "fairly normal and extensive daily activities [including] work that was 'off the books,' cleaning, light activities, cooking, visiting, driving, going on travels and vacations, and social activities" [Doc. 18 at Page ID # 1813 (citing Tr. 20, 24, 345, 447, 480)].

In considering a claim for disability, the ALJ generally must give the opinion of the claimant's treating physician "controlling weight." 20 C.F.R. § 404.1527(c)(2).[3] But the ALJ must do so only if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id*. If the opinion is not given controlling weight, as here, the ALJ must consider the following factors to determine what weight to give it: "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment

---

[3] The corresponding regulation for claims for SSI is 20 C.F.R. § 416.927(c)(2).

relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(c)(2)). The ALJ is not required to explain how she considered each of these factors, but must nonetheless give "good reasons" for giving a treating physician's opinion less than controlling weight. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011); *see also* 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2) (the ALJ must "give good reasons in [the] notice of determination or decision for the weight . . . give[n the] treating source's medical opinion."); *Morr v. Comm'r of Soc. Sec.*, 616 F. App'x 210, 211 (6th Cir. 2015) (holding "good reasons" must be provided "that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight." (internal quotation marks omitted) (citing *Wilson*, 378 F.3d at 544)).

In this case, the ALJ identified inconsistencies between the opinions of Dr. Musick and the state-agency professionals. "[O]pinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). However, "a properly balanced analysis might allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians[, but] the regulations do not allow the application of greater scrutiny to a treating-source opinion as a means to justify giving such an opinion little weight." *Id.* at 379-80 (internal citation omitted).

The ALJ considered that although Dr. Musick said Plaintiff could not bend at all (Tr. 1728), she demonstrated an ability to stoop during the administrative hearing (Tr. 26). An ALJ may properly consider his or her own personal observations in making a determination as to whether subjective complaints of pain and limitation are as disabling as alleged as part of the

10

overall evaluation of the credibility of the individual's statements. SSR 96-7p (now rescinded);[4] *see also* SSR 16-3p (ALJ may consider personal observations of the claimant with the individual's statement and with the evidence in the file). *See also, e.g., Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 430 (6th Cir. 2015) (treating doctor's assertion that claimant was unable to walk from the parking lot to work was "seemingly contradicted by the fact that Blankenship was able to walk unassisted from her car to the room where the hearing was being held."). In addition to her own personal observations, the ALJ noted that Dr. Musick's opinion concerning Plaintiff's inability to bend contradicted "repeated physical examinations [showing Plaintiff] to have normal or near normal range of the spine." (Tr. 26).

Plaintiff has not directly disputed the ALJ's finding that her subjective complaints of pain were not entirely credible (Tr. 19). An ALJ's credibility analysis or, as it is now called, subjective symptom evaluation, is "'inherently intertwined'" with the RFC assessment. *See Murphy v. Comm'r of Soc. Sec.*, No. 1:15-CV-126-SKL, 2016 WL 2901746, at *10 n.7 (E.D. Tenn. May 18, 2016) (quoting *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) ("Since the purpose of the credibility evaluation is to help the ALJ assess a claimant's RFC, the ALJ's credibility and RFC determinations are inherently intertwined.")). The determination of

---

[4] The SSA published SSR 16-3p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims*, which supersedes and rescinds SSR 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*. SSR 16-3p eliminates the use of the term "credibility" from SSA policy because SSA regulations do not use this term, and subjective symptom evaluation is not an examination of a claimant's character. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). SSR 16-3p took effect in March 2016, some nine months after the ALJ issued the decision, and it instructs ALJs in accordance with the applicable regulations to consider all of the evidence in the record in evaluating the intensity and persistence of symptoms after finding the claimant has a medically determinable impairment. As this is what the ALJ did in this matter, it is not necessary to determine whether SSR 16-3p applies retroactively. *See Dooley v. Comm'r of Soc. Sec.*, No. 16-5146, 2016 WL 4046777, at *5 n.1 (6th Cir. July 28, 2016). As the record in this case and much of the existing case law refers to "credibility" evaluations, this report will occasionally refer to the ALJ's analysis using the same term.

Plaintiff's "credibility" as to her allegations of disabling pain is left to the ALJ and is generally binding on the reviewing court. *See*, *e.g.*, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones*, 336 F.3d at 476; *Atterberry v. Sec'y of Health & Human Servs.*, 871 F.2d 567, 571 (6th Cir. 1989).

Where, as here, the ALJ's credibility assessment is fully explained and not at odds with uncontradicted evidence in the record, it is entitled to great weight. *See, e.g., Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013); *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). In addition, Plaintiff has not challenged the ALJ's determination that her statements regarding the intensity, persistence and limiting effects of her symptoms were not entirely credible.

I **FIND** the ALJ's decision describes sufficient evidence to support the RFC and demonstrates a proper evaluation of the medical opinions and evidence. *See, e.g.*, *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 630 (6th Cir. 2016) ("[T]he ALJ gave good reasons for discounting Dr. Chapman's opinion, and satisfied the mandates of 20 C.F.R. § 404.1527 by considering some of the listed factors."). The ALJ did not reject the opinions of Dr. Musick; instead, the ALJ afforded the opinions concordant weight with the record to arrive at a decision supported by substantial evidence. The ALJ discussed in her decision the evidence that she considered, noting not only the medical source statements but also Plaintiff's medical history, the medical signs and laboratory findings, the effects of treatment, the reports of daily activities, recorded observations, and other information. These are all appropriate types of relevant evidence that the ALJ must consider in evaluating medical opinions and formulating an RFC. *See* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

The ALJ adequately explained the conflicts among the medical source opinions and the RFC given to Plaintiff, and the ALJ is not required to do more. A properly balanced analysis, as was performed by the ALJ in this case, can allow the Commissioner to ultimately defer more to the opinions of consultative doctors than to those of treating physicians. *See* SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."); *see also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (observing that "[i]n appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources") (citing SSR 96–6p, 1996 WL 374180, at *3 (July 2, 1996)).

I also **FIND** that the ALJ properly applied the factors for determining what weight to give Dr. Musick's opinion, s*ee* 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2), and that she explained her reasons for giving it only "some" weight both in the paragraphs in which she directly discussed the opinion and elsewhere in her decision. Contrary to Plaintiff's contentions, the ALJ also appropriately considered the opinion of Dr. Mullady and included limitations in the RFC that reflected Plaintiff's credible limitations.

The ALJ's decision discusses the evidence considered, noting not only the medical source statements but also Plaintiff's medical history, the medical signs and laboratory findings, diagnostic imaging, the effects of treatment, the reports of daily activities, and other observations. The record documents that Plaintiff went on vacations (Tr. 1050, 1484, 1491), was working to some degree at one point (Tr. 16), and at another point was staying with a friend and cleaning his house (Tr. 1055). The ALJ properly considered such activities in determining

credibility and RFC issues. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013).

I also **FIND** the ALJ's narrative discussion described sufficient evidence to support her RFC determination and her evaluation of the medical evidence and opinions. An ALJ's determination must stand if it is supported by substantial evidence regardless of whether the reviewing court would resolve the conflicts in the evidence differently. *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Here, the ALJ was faced with conflicting evidence relating to Plaintiff's ability to perform a reduced range of sedentary work. As outlined above, the ALJ's resolution of this conflict was done in accordance with agency regulations and controlling law and is supported by substantial evidence. Because the ALJ reached her decision using correct legal standards and because those findings are supported by substantial evidence, the Court must affirm it, even if reasonable minds could disagree on whether the individual was disabled or substantial evidence could also support a contrary result. *See, e.g., Wright v. Massanari,* 321 F.3d 611, 614 (6th Cir. 2003) (internal citations omitted); *see also Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005) ("If substantial evidence supports the Commissioner's decision, this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." (Citation and internal quotation marks omitted)). Consequently, I **FIND** that the ALJ's evaluation of the opinion evidence and RFC determination are supported by substantial evidence.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND**[5] that:

1) Plaintiff's motion for judgment on the pleadings [Doc. 15] be **DENIED**;

2) The Commissioner's motion for summary judgment [Doc. 17] be **GRANTED**; and

3) The Commissioner's decision denying benefits be **AFFIRMED**.

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).